United States District Court
Southern District of Texas

**ENTERED**

February 13, 2017

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HC4, INC. EMPLOYEE STOCK OWNERSHIP PLAN, | § § § | |
| Plaintiff, | § § | |
| VS. | § | CIVIL ACTION NO. 4:16-CV-00090 |
| | § | |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | § § § | |
| Defendant. | § § | |

## OPINION AND ORDER

Pending before the Court in the above-referenced cause are the following motions: (1) Defendant's Motion for Summary Judgment, Doc. 17; (2) Plaintiff's Motion to Defer Pursuant to Rule 56(d), Doc. 18; (3) Plaintiff's Motion for Leave to Amend Complaint, Doc. 20; and (4) Defendant's Motion to Strike, Doc. 37. Having considered the motions, responses, replies, relevant law, and for reasons discussed fully below, the Court grants both of Defendant's motions and denies both of Plaintiff's motions.

### I.   Background

This case arises from Plaintiff HC4, Inc. Employee Stock Ownership Plan's ("ESOP" or "Plaintiff"), request for reimbursement from its insurer, Defendant Travelers Casualty and Surety Company of America ("Travelers" or "Defendant"), for losses allegedly caused by the fraudulent acts of a former officer of HC4, Inc. ("HC4"). The primary issue raised is whether an insured ERISA stock ownership plan can seek reimbursement under a crime policy limiting recovery to "direct losses" for a loss of its stock portfolio value when a shareholder's actions against the corporation's assets caused a devaluation of the corporation, which in turn, led to the loss in value of corporate stock within the portfolio. The Court finds that it cannot.

HC4 is a Texas corporation. Doc. 17-4 at 2–4. During the events culminating in this lawsuit, the corporation had four equal shareholders: (1) Esther Francis ("Francis"); (2) Monique Freeman; (3) Jason Freeman ("Freeman"); and (4) Plaintiff ESOP. Doc. 17-7 at 5–6.

HC4 entered into two insurance policies with Defendant during the relevant time period: (1) the ERISA Compliance Bond, No. 105769724 ("Bond"); and (2) the Wrap Plus Insurance Policy, Policy No. 105873737 ("Policy"), (collectively the "Policies"). Docs. 17-2, 17-5. Both Policies contained provisions that insured Plaintiff and HC4 against "direct" losses of "property" caused by "dishonest or fraudulent acts" or "theft or forgery" of an "employee." Docs. 17-2 at 2, 17-5 at 35.

On April 27, 2014, HC4 terminated Francis after discovering that she had committed fraud in her role as President of HC4 during the period from December 31, 2012, through at least April 30, 2014. Doc. 17-7 at 2, 11. HC4 and the ESOP then sought reimbursement of the losses under the Policies. *Id.* To this end, on behalf of HC4 and the ESOP, Freeman reported Francis's actions to Defendant by letter dated July 9, 2014. *Id.* at 2.

This letter, and the Proof of Loss that Freeman submitted to Defendant along with it, stated that Francis: (1) made HC4 responsible for pre-existing tax liabilities; (2) paid non-employees (i.e., "ghost" employees); (3) paid personal debts with HC4's credit card; (4) obtained funding or proceeds for her own companies using HC4's name; (5) stole HC4's property; (6) failed to pay for labor and materials to subcontractors; and (7) reimbursed herself for fraudulent expenses using HC4's funds. *Id.* at 6–12. Lastly, Plaintiff alleged that as a result of these actions the value of shares in HC4 plummeted from $40 per share to $0 per share, costing the ESOP $700,000. *Id.* at 12–13.

In the motions, responses, and replies currently pending before this Court, Defendant

contends that (1) Plaintiff's initial claimed loss for the value of HC4 stock is barred by the plain language and policy exclusions of the Policies; (2) Plaintiff's attempt to amend and supplement to allege additional damages is untimely; and (3) even if the Court finds Plaintiff's tardiness in requesting amendment excusable, amendment is futile because the additional damages are also barred by language contained within the Policies. Docs. 17, 19, 25, 37, 40. Plaintiff argues that (1) it has not had enough time to complete discovery; (2) there are additional losses that support its claim and it should be allowed to amend its complaint to add these losses; and (3) Plaintiff's recovery is not barred by the language of the Policies. Docs. 18, 20, 34, 38. The motions are now ripe for adjudication.

## II.  Plaintiff's Motion for Leave to Amend

### a.  Legal Standard

"[T]he grant or denial of an opportunity to amend is within the discretion of the District Court." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Ordinarily, Rule 15(a) of the Federal Rules of Civil Procedure governs the amendment of pleadings." *Filgueira v. U.S. Bank Nat. Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013) (per curiam) (unpublished). Rule 15(a) allows a party to amend its pleadings once as a matter of course within 21 days of serving in it or, if a responsive pleading is required, 21 days after service of a responsive pleading. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave" and courts must "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

The standard of 15(a) is a liberal one, and there is generally a presumption in favor of granting leave to amend. *See U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 386 (5th Cir. 2003). As a result, a motion for leave to amend should not be denied unless

there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman*, 371 U.S. at 182.

Once a trial court imposes a scheduling order, however, Federal Rules of Civil Procedure 15 and 16 operate together to govern the amendment of pleadings. *Tex. Indigenous Council v. Simpkins*, 544 Fed. App'x 418, 420 (5th Cir. 2013) (per curiam) (unpublished). Under Rule 16(b), once a scheduling order's deadline has passed, that scheduling order may be modified "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Accordingly, in order for the more liberal standard of Rule 15(a) to apply to a post-deadline amendment, a party "must show good cause for not meeting the deadline." *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008) (citation and internal quotation marks omitted). "The good-cause standard requires the 'party seeking relief to show that the deadlines [could not] reasonably [have been] met despite the diligence of the party needing extension.'" *S&W Enters., LLC v. SouthTrust Bank of Ala.*, *NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990)). Four factors are relevant in determining whether the movant has good cause: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id.* at 536 (citation and internal quotation marks omitted).

### b.  Analysis

Because Plaintiff filed its Motion for Leave on May 12, 2016—almost a month after the amendment deadline contained in the Scheduling Order expired—Rule 16(b) applies to Plaintiff's request. Accordingly, the Court must address each of the 16(b) factors. It does so in

turn.

### i. Explanation

Plaintiff argues that it should be granted leave to amend because the new damage accusations it seeks to assert in its amended complaint are based on information contained in documents that were not produced to Plaintiff until April 13, 2016—only two days before the deadline to amend. Doc. 20 at 1. However, Plaintiff provides no evidence to support this claim. It does not specify what these documents were, what new information these documents revealed, or how such revelations support its case. In fact, the record demonstrates that Plaintiff was—or should have been—aware of the new damage allegations it seeks to assert long before April 13, 2016. This is because the Proof of Loss lists the additional losses Plaintiff now seeks to recover, and that document was submitted to Defendant on Plaintiff's behalf on July 9, 2014—before the suit was even filed. Doc. 17-7. Even if Plaintiff was somehow not notified that this document had been submitted on its behalf or was in its possession, the record also indicates that Plaintiff received the Proof of Loss back from Defendant during discovery on January 4, 2016. Doc. 25-1 at ¶ 3. In light of this, the Court concludes that Plaintiff should have known of the facts upon which its proposed amendment is based long before the amendment deadline. Accordingly, the first factor favors denial. *See Clayton v. ConocoPhillips Co.*, 2010 U.S. Dist. LEXIS 36003, at *6–7 (S.D. Tex. Apr. 12, 2010) ("In the context of a motion for leave to amend, the court may deny the motion if the movant 'knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint.'" (quoting *Udoewa v. Plus4 Credit Union*, 2010 WL 1169963, at *2 (S.D. Tex. Mar. 23, 2010))).

### ii. Importance

The second factor of the inquiry also weighs against Plaintiff. If a proposed amendment

would be futile, the district court is free to deny it. *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citation omitted); *Stewart v. City of Houston Police Dept.*, 372 Fed. App'x 475, 478 (5th Cir. 2010) (per curiam) (unpublished); *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003) (citation omitted). Here, the Court believes that the amendment would be futile because it seeks damages for losses that were suffered by HC4, not the ESOP itself. As discussed further in the context of Defendant's Motion for Summary Judgment, such damages are not compensable under the plain language of the Policy and Bond at issue here.

### iii.  Prejudice

The third factor also favors Defendant. Defendant filed its now-pending Motion for Summary Judgment on April 7, 2016, based on the allegations that the ESOP made in its live pleading and discovery requests. As discussed further in the section addressing Plaintiff's Motion to Defer, on April 28, 2016, Plaintiff submitted a halfhearted response to Plaintiff's Motion that lacked an affidavit in support of its 56(d) request and attached no evidence to support its position. *See* Doc. 17. Plaintiff then waited to amend its complaint until May 12, 2016. To allow Plaintiff to amend at this late date would moot Defendant's pending Motion for Summary Judgment and prejudice Defendant by requiring it to incur additional attorney's fees to prepare a new response to Plaintiff.

### iv.  Continuance

In September, the parties agreed to extend all remaining deadlines, moving the close of discovery to December 30, 2016. Doc. 33. Shortly before discovery was scheduled to close, however, this Court granted the parties' agreed motion to stay all deadlines. Doc. 39. While the Court recognizes that this means discovery has not officially closed and it could grant a

continuance to allow more time for discovery, it declines to do so because the other factors weigh so heavily in favor of Defendant. Accordingly, Plaintiff's Motion for Leave to Amend is denied.

### III. Plaintiff's Motion to Defer Pursuant to 56(d)

#### a. Legal Standard

Rule 56(d) "provides a mechanism for dealing with the problem of premature summary judgment motions." *McDougall v. Binswanger Mgmt. Corp.*, 3:10-CV-2563-D, 2012 WL 1109551, at *3 (N.D. Tex. Apr. 3, 2012) (citation omitted). Provided the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," Rule 56(d) allows the court to (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order. Fed. R. Civ. P. 56(d). It is "usually invoked when a party claims that it has had insufficient time for discovery or that the relevant facts are in the exclusive control of the opposing party." *Union City Barge Line, Inc. v. Union Carbide Corp.*, 823 F.2d 129, 136 (5th Cir. 1987) (referring to Rule 56(f), the precursor to Rule 56(d)). Importantly, Rule 56(d) offers relief where the nonmovant has not had a full opportunity to *conduct* discovery, not when a nonmovant has failed to *complete* discovery. *See Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1985) (rejecting nonmovant's contention that district court abused its discretion by failing to permit him to complete discovery before granting summary judgment, and holding that "Rule 56 does not require that discovery take place before granting summary judgment.").

Rule 56(d) motions are "broadly favored and should be liberally granted." *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (per curiam) (quoting *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010)) (internal quotation marks omitted).

Nevertheless, to warrant a continuance, "a party must indicate to the court by some statement . . . why [it] needs additional discovery and *how* the additional discovery will create a genuine issue of material fact." *Stults v. Conoco, Inc.*, 76 F.3d 651, 657–58 (5th Cir. 1996) (alteration in original) (internal quotation marks omitted) (quoting *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993)) (internal quotation marks omitted). "A party 'cannot evade summary judgment simply by arguing that additional discovery is needed,' and may not 'simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts.'" *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 162 (5th Cir. 2006) (quoting *Brown v. Miss. Valley State Univ.*, 311 F.3d 328, 333, n.5 (5th Cir. 2002) and *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 305 (5th Cir. 2004)). "The party must demonstrate 'how the additional time will enable [it] to rebut the movant's allegations of no genuine issue of fact.'" *McDougall*, 2012 WL 1109551, at *4 (alteration in original) (quoting *Washington*, 901 F.2d at 286). A nonmovant is not entitled to a continuance if it "fail[s] to explain what discovery [it] did have, why it was inadequate, and what [it] expected to learn from further discovery" and gives only "vague assertions of the need for additional discovery." *Bauer v. Albemarle Corp.*, 169 F.3d 962, 968 (5th Cir. 1999) (quoting *Reese v. Anderson*, 926 F.2d 494, 499 n.5 (5th Cir. 1991) (internal quotation marks omitted)).

### b.  Analysis

Here, Plaintiff's Response to Defendant's Motion for Summary Judgment is styled as an "alternative" motion under 56(d). However, Plaintiff's document primarily focuses on the 56(d) argument that it needs more time for discovery. Nevertheless, Plaintiff attaches no affidavit or declaration to support this argument and makes only vague assertions that more time is needed without specifying what it expects to learn from further discovery. This is insufficient to prevail

on a 56(d) motion.

The only explanation Plaintiff gives for its failure to attach an affidavit is that "[d]ue to the proximity of Plaintiff's response deadline, Plaintiff was unable to obtain an affidavit from Mr. Freeman." Doc. 18 at 8. The Court is not persuaded by this argument. This case was filed over a year before Defendant filed its Motion for Summary Judgment and on September 9, 2015, Plaintiff identified Freeman as someone with knowledge of facts concerning the contentions and allegations at the heart of this dispute in its Answers to Defendant's First Set of Interrogatories. Doc. 17-10. Accordingly, the Court concludes that Plaintiff should have been aware of Freeman's relevance and the potential need to obtain an affidavit or deposition testimony from him at that time. Nevertheless, assuming arguendo that Plaintiff did not recognize the necessity of obtaining Freeman's affidavit until the last minute, Plaintiff still made no effort to obtain an affidavit from Freeman after filing its 56(d) motion. Instead, it waited until June 7, 2016—well over a month after briefing on Defendant's Motion for Summary Judgment had closed—to depose Freeman. Doc. 34 at ¶ 2. Plaintiff then waited until October to use the information gleaned from Freeman's deposition to supplement its briefing on Defendant's Motion for Summary Judgment. *See id.*

In its Motion, Plaintiff also alleges that it only recently received the financial statements and materials necessary to support its claims. Doc. 18. Plaintiff does not adequately explain what these documents are or how it expects they will help it support its claims. Initially, the Court notes that such an assertion is the precise sort of vague statement insufficient to defer a ruling on a motion for summary judgment. More importantly, the record undermines Plaintiff's claim. As the amended complaint makes clear, the additional amounts that Plaintiff argues it lost were originally documented in the Proof of Loss that Freeman submitted to Defendant in July 2014. In

fact, the letter that Freeman sent to Defendant explaining the claimed losses and attaching the Proof of Loss was sent *on behalf of Plaintiff*—so it is difficult to comprehend how Plaintiff was unaware of this document until the last minute. Doc. 17-7 at 5–13. Nevertheless, even assuming Plaintiff was somehow unaware of this document when it filed its case, the Proof of Loss and Freeman's letter were produced back to Plaintiff on January 4, 2016—long before Defendant filed its Motion for Summary Judgment. Doc. 25-1 at ¶¶ 3–4. For these reasons, the Court determines that Plaintiff's 56(d) Motion is defective and denies it.

### IV. Defendant's Motion to Strike

#### a. Legal Standard

"The purpose for having a motion, response, and reply is to give the movant the final opportunity to be heard, and to rebut the nonmovant's response, thereby persuading the court that the movant is entitled to the relief requested by the motion." *Kozak v. Medtronic, Inc.*, CIV.A. H-03-4400, 2006 WL 237000, at *4 (S.D. Tex. Jan. 31, 2006), *on reconsideration in part*, CIV.A. H-03-4400, 2006 WL 903710 (S.D. Tex. Apr. 6, 2006) (quoting *Murray v. TXU Corp.*, No. Civ. A. 3:03-CV-0888P, 2005 WL 1313412, at *4 (N.D. Tex. May 27, 2005) (internal quotation marks omitted). "A sur-reply is appropriate by the non-movant only when the movant raises new legal theories or attempts to present new evidence at the reply stage." *Id.* (quoting *Murray*, 2005 WL 1313412, at *4) (internal quotation marks omitted).

#### b. Analysis

Here, Plaintiff is not challenging any newly presented legal theories or evidence raised by Defendant's Reply. Plaintiff simply wants an opportunity to continue the argument by raising new theories of recovery. This it cannot do. *See Murray*, 2005 WL 1313412, at *4 (noting that a surreply is an inappropriate vehicle for continuing argument unless the reply raises new theories

or evidence).

Moreover, Plaintiff did not offer any persuasive explanation as to why the arguments made in its Supplemental Memorandum could not have been raised in its Response. Plaintiff argues that it did not discover the loss of $463,283.04 until it deposed Freeman. Doc. 34 at 2. But, as already discussed, this failure is suspect in light of two facts. First, Plaintiff had the evidence on which Freeman relied in making his claims, i.e., the Proof of Loss, by January at the latest; and second, Plaintiff was aware of the relevance and importance of Freeman's testimony as far back as September of 2015—if not far earlier—but made no attempt to depose him until June 2016. Accordingly, the Court grants Defendant's Motion to Strike.

## V. Motion for Summary Judgment

### a. Legal Standard

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewed in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1996). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The movant initially bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact on which the nonmovant bears the burden of proof at trial. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S.

871, 885 (1990) (citations omitted). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. When the moving party makes an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact concerning every element of its cause of action in order to defeat the motion for summary judgment. *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998); *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd.*, 40 F.3d 698, 712 (5th Cir. 1994); *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). There is no genuine issue for trial if a rational trier could not find for the nonmoving party based on the evidence presented. *City Pub. Serv. Bd.*, 40 F.3d at 712–13 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584–88 (1986)).

Allegations in a plaintiff's complaint are not evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citation and internal quotation marks omitted) ("[P]leadings are not summary judgment evidence."); *Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1995) (quoting *Solo Serve Corp. v. Westtown Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991) (for the party opposing the motion for summary judgment, "'only evidence—not argument, not facts in the complaint—will satisfy' the burden."). Likewise, unsubstantiated assertions, conclusory allegations, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). Instead, the nonmovant must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial." *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001)

(quoting *Celotex*, 477 U.S. at 324) (internal quotation marks omitted).

In ruling on a summary judgment motion, the court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant, but the court may not make credibility determinations or weigh the evidence. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

**b. Analysis**

Plaintiff brings four claims against Defendant for its failure to pay for the alleged losses to the ESOP under either the Policy or the Bond: (1) breach of contract; (2) violations of the Texas Insurance Code; (3) violation of the Prompt Payment of Claims of Act; and (4) breach of the duty of good faith and fair dealing. Doc. 1-1 at 10–13. These four claims essentially fall into two categories: contractual and extra-contractual claims. Having examined the law in each area, the Court concludes that summary judgment should be granted on all four of Plaintiff's claims.

**i. Contractual Claim**

The heart of the parties' dispute is whether the loss in value of the ESOP's stock holdings in HC4—which resulted from Francis's dishonest acts in her capacity as an officer for HC4—are covered losses under the Policy or the Bond. Defendant argues that a number of terms and exclusions within the Policies preclude coverage. Doc. 17. Plaintiff, of course, disagrees. Doc. 18. Plaintiff's primary response to Defendant's Motion is that has not had enough time to complete discovery. This argument has already been addressed in section III and will not be revisited. Plaintiff's next strategy is to distinguish the cases cited by Defendant. *See id.* at 5–9. Aside from its plea for deferral and effort to distinguish Defendant's cases, however, Plaintiff does little else to fend off summary judgment; Plaintiff does not advance any cases of its own or

attach any evidence that supports its opposition to Defendant's Motion.

Under the section dealing with "Employee Theft," the Policy states: "The Company will pay the Insured for the Insured's direct loss of, or direct loss from damage to, Money, Securities and Other Property directly caused by Theft or Forgery committed by an Employee, whether identified or not, acting alone or in collusion with other persons." Doc. 17-5 at 35. Similarly, under the section entitled "ERISA Fidelity" the Policy states that it covers "direct loss of, or direct loss from damage to, Money, Securities and Other Property that belongs to an Employee Benefit Plan, directly caused by Theft or Forgery committed by a Fiduciary, whether identified or not, acting alone or in collusion with other persons." *Id.* Under the section entitled "Coverage," the Bond contains similar language stating: "We will pay only for loss of 'property' sustained by you resulting directly from dishonest or fraudulent acts committed by an 'employee' acting alone or in collusion with others." Doc. 17-2 at 2.

Defendant contends that the "direct loss," "directly caused by," and "resulting directly from" language contained in the Policies allows coverage only for losses that are the immediate (i.e., not indirect) effect of employee dishonesty. Doc. 17. Since the direct result of Francis's embezzlement was a financial loss to HC4, and the indirect result was a resulting loss in the company's stock value, which ultimately affected the ESOP because it held a large amount of HC4 stock, Defendant concludes that Plaintiff cannot recover under the Policies. *Id.*

The court finds this argument persuasive. In Texas,[1] insurance policies are controlled by the rules of interpretation and construction that are applicable to contracts generally. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994) (citing *Upshaw v. Trinity Cos.*, 842

---

[1] In diversity cases, federal courts must apply state substantive law. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). The parties do not dispute that Texas law applies in this case.

S.W.2d 631, 633 (Tex. 1992); *W. Reserve Life Ins. Co. v. Meadows*, 152 Tex. 559, 261 S.W.2d 554, 557 (1953)). "The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (citing *Forbau*, 876 S.W.2d at 133). When the terms of a written contract can be given a definite or certain legal meaning, then they are not ambiguous and the court will construe the contract as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (citing *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (Tex. 1951); *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980)).

In light of these rules of interpretation and construction, one of our sister district courts concluded with regard to a policy containing the same "resulting directly from" language in the same section of the policy as in the Bond: "Inclusion of the words 'resulting directly from' indicates an intent to limit the coverage available and is especially significant because the language appears in a section of the policy that specifically addresses the scope of coverage." *Lynch Properties, Inc. v. Potomac Ins. Co. of Ill.*, 962 F. Supp. 956, 961–62 (N.D. Tex. 1996), *aff'd*, 140 F.3d 622 (5th Cir. 1998). To support its interpretation, the district court noted that "courts construing analogous language have reached similar conclusions." *Id.* (citing *Fed. Deposit Ins. Corp. v. United Pac. Ins. Co.*, 20 F.3d 1070, 1080 (10th Cir. 1994) ("Language in a fidelity bond to the effect that the insured is covered for 'losses directly resulting from . . . .' indicates a direct loss or the actual depletion of [the insured's] funds caused by the employee's dishonest acts."); *Cont'l Bank, NA. v. Aetna Casualty & Surety Co.*, 164 Misc. 2d 885, 626 N.Y.S. 2d 385, 387–88 (N.Y. Sup. Ct. 1995) (in policy containing "directly from" language, no coverage available for insured whose employees caused customers, but not insured, to suffer

"actual loss")).

In another district court case interpreting a policy containing the same "resulting directly from" language, the court came to a similar conclusion as the *Lynch* court. Relying on a number of Fifth Circuit cases, the court noted: "Courts interpreting fidelity policies similar to those at issue in this litigation have consistently concluded that the insured does not suffer a direct loss unless the insured's assets, and not those of a third party, are reduced because of the offending employee's wrongful conduct." *Fireman's Fund Ins. Co. v. Special Olympics Int'l, Inc.*, 249 F. Supp. 2d 19, 27 (D. Mass. 2003), *aff'd on other grounds*, 346 F.3d 259 (1st Cir. 2003) (citing *Cont'l Cas. Co. v. First Nat'l Bank of Temple*, 116 F.2d 885, 886–87 (5th Cir. 1941) (concluding bank would only be entitled to coverage if bank's assets were actually depleted where bank's employees stole customers' deposits and concealed the scheme by replacing the stolen deposits with subsequent deposits of other customers); *In re Ben Kennedy & Assoc., Inc.*, 40 F.3d 318, 319–20 (10th Cir. 1994) (limiting insured's recovery to actual amounts paid as result of employee's sham insurance scheme but denying coverage for loss of customer funds in its possession, but which it did not own); *Fid. & Deposit Co. of Md. v. USAFORM Hail Pool, Inc.*, 463 F.2d 4, 6–7 (5th Cir. 1972) (finding no loss where offending employee used trust funds to pay insured's debts thereby converting its obligation to pay creditors to an obligation to pay customers whose funds had been diverted; assets of insured bank were neither increased nor diminished); *In re Schluter, Green & Co.*, 93 F.2d 810, 812–13 (4th Cir. 1938) (concluding customers, not insured brokerage firm, suffered loss when employee diverted customer funds and placed such funds in insured's account)).

Defendant cites *Methodist Health System Foundation, Inc. v. Hartford Fire Insurance Co.*, 834 F. Supp. 2d 493, 496 (E.D. La. 2011) and argues it is a particularly relevant case

because it applies the majority of courts' understanding of "direct loss" to an insured's portfolio losses. In *Methodist*, the plaintiff-insured sought recovery from its insurer for the loss in value of its stock portfolio as a result of Bernard Madoff's famed Ponzi scheme. *Id.* at 495. In that case, plaintiff-insured invested in a mutual fund that invested in a hedge fund that, in turn, invested in Bernard Madoff's entity. *Id.* at 494. After Madoff's scheme was discovered, the value of plaintiff-insured's portfolio suffered substantial losses. *Id.* As a result, plaintiff-insured sought to recover the loss under a policy covering loss "resulting directly from" certain dishonest acts. *Id.* at 496. Relying on the *Lynch* case, the court in *Methodist* concluded that the plaintiff-insured's portfolio losses were indirectly caused by Madoff's actions and, therefore, not covered. *Id.* at 496–97. Specifically, the Court concluded that only the hedge fund, Tremont, had suffered losses "resulting directly from" the Madoff Ponzi scheme. *Id.* Because Plaintiff invested in Meridian, who invested in Tremont, Plaintiff was too far removed from the Madoff scheme in order to recover under a "direct loss" provision. *Id.* at 493, 496.

In light of these decisions, the court finds no ambiguity in either the Policy or Bond's language. The intent is clear to provide coverage only for direct losses to the insured, i.e., the Plaintiff ESOP, from acts of employee dishonesty. However, under the rationale of the afore-mentioned cases, it is clear that Plaintiff has not suffered a direct loss. Plaintiff seeks recovery of the lost value of HC4 stock, but Francis's actions only caused a direct loss to HC4's assets. The fact that the loss of HC4's assets then caused a devaluation of the company, which in turn affected the value of HC4 stock ESOP held, is a prime example of a third party's assets, rather than those of the insured, being "reduced because of the offending employee's wrongful conduct." *Fireman's Fund*, 249 F. Supp. 2d at 27.

Moreover, like the plaintiff-insured in *Methodist*, whose portfolio-value decline was too

far removed from Madoff's Ponzi scheme to constitute a "direct loss," Plaintiff's loss is removed from Francis's actions. Indeed, the losses caused by Francis can only be claimed as a direct loss by HC4. A third-party holding corporate stock, like Plaintiff, simply cannot avail itself of policy protection under the plain language of a policy limiting coverage to "direct" losses when an corporate officer committed fraud against the corporation, which in turn caused a devaluation of the company stock. Accordingly, no policy proceeds were due Plaintiff and Defendant breached no contractual duties to Plaintiff. Defendant's Motion for Summary Judgment is granted on Plaintiff's breach-of-contract claim and it is, therefore, dismissed.[2]

### ii.  Extra-Contractual Claims

The Court first notes that all of Plaintiff's extra-contractual claims are deficient in that they do not allege damages other than the policy proceeds Plaintiff contends Defendant owes the ESOP as a result of the diminution of value of HC4 stock. *See Parkans Int'l LLC v. Zurich Ins. Co.*, 299 F.3d 514, 519 (5th Cir. 2002) ("There can be no recovery for extra-contractual damages for mishandling claims unless the complained of actions or omissions caused injury independent of those that would have resulted from a wrongful denial of policy benefits." (citing *Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 198–99 (Tex. 1998))). There are additional reasons that support the Court's grant of summary judgment on these claims, however. The Court addresses each type of claim in further detail below.

### 1.  Prompt Payment Act Claim

Violations of the Texas Prompt Payment of Claims Act, Tex. Ins. Code 542.051–542.062, are predicated on establishing breach of an insurance contract. *Weiser-Brown*

---

[2] Because the Court finds that the "direct" language of the Policies is dispositive, it need not address Defendant's remaining arguments that other policy language and exclusions also bar Plaintiff's recovery. The Court does note, however, that a number of the remaining arguments also appear to have merit upon cursory inspection.

*Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 518 (5th Cir. 2015) (stating that an insured must establish a valid claim under an insurance policy for which the insurer is liable before the insured can recover under the Texas Prompt Payment Statute). Thus, dismissal of a breach-of-contract claim forecloses liability under the Prompt Payment Statute. *Am. Const. Benefits Group, LLC v. Zurich Am. Ins. Co.*, 3:12-CV-2726-D, 2013 WL 1797942, at *2 (N.D. Tex. Apr. 29, 2013) (citing Tex. Ins. Code § 542.060(a); *Progressive Cnty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005) (per curiam)). "The essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (citing *Hussong v. Schwan's Sales Enters., Inc.*, 896 S.W.2d 320, 326 (Tex. App.—Houston [1st Dist.] 1995, no writ)).

As already discussed in the previous section, there is no question of material fact that the ESOP's losses are not covered under the policies at issue. Accordingly, no benefits are owed to the ESOP and Defendant has not breached any contractual duties by refusing to pay benefits under the Policy or Bond. Defendant is thus entitled to summary judgment on Plaintiff's breach-of-contract claim. Dismissal of this claim likewise mandates dismissal of Plaintiff's Prompt Payment Act claim.

### 2. Statutory & Common-Law Bad-Faith Claims

"Under the common law, an insurer breaches the duty of good faith and fair dealing if it 'has no reasonable basis for denying or delaying payment of a claim.'" *Henry v. Mut. of Omaha Ins. Co.*, 503 F.3d 425, 429 (5th Cir. 2007) (per curiam) (quoting *Higginbotham v. State Farm Mut. Auto. Ins.* Co., 103 F.3d 456, 459 (5th Cir. 1997)). This "reasonable-basis test" also applies

to a cause of action against the insurer for bad faith under the Texas Insurance Code. *Id.* (citing *Higginbotham*, 103 F.3d at 460). "Evidence establishing only a bona fide coverage dispute does not demonstrate bad faith." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998) (citations omitted).

In this case, the Court concludes that there is no legally sufficient evidentiary basis for a trier of fact to conclude that Defendant violated Texas Insurance Code § 541 or the common-law duty of good faith and fair dealing. As already mentioned, there is no liability if the insurer had any reasonable basis to deny coverage or there is a bone fide coverage dispute. *See Weiser-Brown*, 801 F.3d at 525–26. Here, as already discussed, under the plain language of the Policies and Fifth Circuit case law, Plaintiff has no claim. Defendant had a reasonable basis for denying coverage because it believed the ESOP's losses were indirect and, therefore, not covered under the explicit terms of the Policy or Bond. Plaintiff has submitted no evidence to challenge Defendant's decision or suggest that another insurer faced with the same circumstances would have acted otherwise. Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's statutory and common-law bad faith claims is granted and these claims are likewise dismissed.

### 1.  Misrepresentation

Plaintiff also asserts that Defendant violated Chapter 541 of the Texas Insurance Code by "making an untrue statement of material fact"; "failing to state a material fact necessary to make other statements made not misleading"; and "making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of material fact." Doc. 1-1 at 12.

Plaintiff fails to present any competent evidence to support his conclusory allegations as to the alleged misrepresentations. Accordingly, summary judgment in Defendant's favor is warranted.

## VI. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's Motion to Defer Pursuant to Rule 56(d), Doc. 18, and Plaintiff's Motion for Leave to Amend Complaint, Doc. 20, are **DENIED**. It is further

**ORDERED** that Defendant's Motion to Strike, Doc. 37, and Defendant's Motion for Summary Judgment, Doc. 17, are **GRANTED**. Accordingly, this case is **DISMISSED WITH PREJUDICE**. Each party is to bear its own costs.

SIGNED at Houston, Texas, this 9th day of February, 2017.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE